# Edward Silliman et al., Trading as The Webster Coal Company (Limited), Plffs. in Err., *v.* Emma Marsden.

One Marsden was employed by defendants as a "team driver" in their coal mine; his duties consisted in driving a team of mules with a train of mine cars, from a side track to the main track and thence to the chutes. The main track was also used by trains from other parts of the mine. It was claimed by defendants that orders were given to Marsden not to leave the side track for the main track, until he received a signal that the road was clear. On a certain occasion Marsden started with his train (it being claimed by defendants that he started without waiting for the signal) and used the brake on one of his cars to stop the train. The car was forced from the track until it struck a post and knocked the outer end of it from under the cross piece, and the "lagging" fell, followed by a fall of the roof,

---

NOTE.—The same ruling was made under similar circumstances of injury to miners in Vanesse v. Catsburg Coal Co. 159 Pa. 403, 28 Atl. 200, and Cambria Iron Co. v. Shaffer, 5 Sad. Rep. 105.

For authorities involving statutory regulations for the protection and safety of workmen in mines, see editorial note to Consolidated Coal & Min. Co. v. Floyd, 25 L. R. A. 848.

consisting of loose earth and slate, resulting in the death of Marsden. His widow thereupon brought suit against his employers, claiming that the timbers in the mine were defectively constructed and were permitted to become defective, by reason of which they broke and caused the decedent's death. The defendants denied this, and claimed that the decedent was guilty of contributory negligence. The jury rendered a verdict for plaintiff. *Held*, that the evidence was well submitted and sustained the verdict.

Under the facts of the case, it could not be said as a question of law either that the mine owners were or were not bound to construct the timbering of the heading strong enough to resist the impact of the cars if they ran off the track; the jury were to determine that from the evidence and the nature of the case.

(Argued May 3, 1887. Decided May 16, 1887.)

July Term, 1886, No. 7, E. D., before MERCUR, Ch. J., GORDON, TRUNKEY, STERRETT, and GREEN, JJ. Error to the Court of Common Pleas of Clearfield County to review a judgment in favor of plaintiff in an action for damages for the death of plaintiff's husband, alleged to have been caused by the negligence of defendants. Affirmed.

It appears from the statement of the plaintiff in error that Robert Marsden, the deceased, was killed in a mine belonging to the Webster Coal Company, Limited, on October 23, 1882, while in the employ of that company. His occupation was that of "team driver,"—that is, he drove a team of three or four mules, which brought a train of ten mine cars from the side track to the chutes; this side track was some 574 feet inside the mouth of the drift; a cross heading 106 feet from the mouth of the drift was turned off to the right, and nearly one half the coal mined in October, 1882, came from this first right heading. There were five drivers employed in this heading, who each brought two cars out to the main track and took them to the chutes; there was but a single track in the main heading so that when these drivers were out from the first right heading, the train driven by Robert Marsden had to wait until these drivers went into their heading again.

There were five other drivers in the main part of the mine, each of whom brought two cars of coal to the side track, where they were made into the train which Marsden with his team hauled to the chutes. From the side track it was a considerable down grade to the mouth of the drift, so that when the train was

started it could not be stopped without putting the brakes on the wheels of the cars. Between the side track and the entrance to the first right heading there was a curve in the track so that one could not see from the side track to the mouth of the drift. A "trapper" boy was stationed at the entrance of the first right heading, whose duty it was to tend the door there, and signal to Marsden up at the side track, when the road was clear, that he might start down with his train. Orders were given to Marsden not to leave the side track with his train until he received the signal from the "trapper" boy that the road was clear. This order was given for the purpose of preventing the necessity of stopping Marsden's train on the grade to let the drivers into the first right heading; this would necessitate his stopping his train on the grade above the first right heading, which he could only do by putting the brakes down on the cars. In coming out with a trip, the position of Marsden was at the rear of his train, while the "patcher" (a boy assistant on the train) was between the first and second car from the front of the train, in order to enable him to put on the brakes in case the train became uncoupled.

On October 23, 1882, Marsden, with his team, was at the side track with a train of ten mine cars made up, and without waiting for the signal from the "trapper" boy, he started his train down the grade toward the mouth of the drift (the drivers from the first right heading were out with their trips) ; when the team passed the curve in the track they stopped of their own accord. Marsden came forward to the front of the train and told the "patcher" he should not have let the mules stop. The boy again started the mules which were then about the length of the train from the entrance to the first right heading; Marsden started back toward the rear of the train and put the brake on the right side of the fifth car; this caused the car to press against the right hand rail (being on the outside of the curve), and pressed it out about half the thickness of the rail, so that the car wheel struck the end of the next rail in front and jumped the track; the momentum of the train (there being no brakes down on the cars behind this one), forced this car to the right of the track until it struck a post with sufficient force to knock the upper end of it out from under the cap, which let the cap or cross piece down onto the cars. The "lagging" which lay from one cap to the next fell, and the roof above, consisting of loose earth and slate, fell, and catching Marsden carried him down and smothered him.

The plaintiff, in her *narr.,* complained that the timbers in the mine were defectively constructed, and that the timbers themselves were permitted to become defective, by reason of which they "broke and were crushed down by the weight of the roof of said mine, and the earth and slate and rock composing the said roof fell upon the said Robert Marsden, thereby so crushing and bruising and injuring him that he immediately thereafter" died.

The plaintiff attempted to show by evidence that this heading had been defectively and improperly constructed, originally, in the following particulars:

The main heading or gangway was too narrow to permit a person to pass safely between a train of cars and the timbers; the timbers were round hemlock, when they should have been oak, squared; the posts were set with too great a slope, 2 feet on each side, when they should have had but one foot of slope; there should have been mud sills laid across the heading, into which the posts should have been mortised, and there were none in this heading; there should have been lateral braces from one set of timbers to the next, so as to have rendered it impossible that one set of timbers could be knocked out of place, and this was not done in this heading; and finally, that the timbers had been permitted to become weakened by time and decay so as to be insufficient in strength to answer the purposes for which they had been placed there.

To this latter allegation the defendants made a flat denial, and gave evidence tending to show that the timbers, although somewhat sap rotten, were not materially weakened, and were of ample strength to support the sides and roof of the heading, and this was proven by the fact that the post struck by the car was not broken, but was knocked out of position.   As to all the criticisms as to the manner in which the timbers were constructed, their size and material, the defendants made two answers,—*viz.,* first, that the objections were not good in fact, and did not establish any negligence on their part; and second, that these timbers were in full view of the deceased, Robert Marsden, who passed them more than thirty times a day, and had done so for about three years, and therefore had full knowledge of the size and character of the timbers, and the manner in which they were constructed and erected, and if they were for any of these reasons defective, or dangerous, he continued in the employ of the defendant company, with full knowledge of that danger; and his

widow could not recover damages for any injury resulting from these causes.

Upon the trial the court was requested (orally) to instruct the jury that defendants were not bound to construct the timbering of this heading of sufficient strength, and in such manner, as to make the timbers capable of withstanding the momentum of a train of cars jumping the track and striking them. The court answered:

"We cannot say to you as a question of law, either that they were bound to make it strong enough to resist the impact of the cars if they ran off the track, or that they were not. You must determine that from the evidence, and from the nature of the case." This was assigned for error.

The court, SIMONTON, P. J., charged the jury as follows:

This is an action brought by Emma Marsden against the Webster Coal Company, in which she seeks to recover damages for the death of her husband, which occurred while he was in the employ of the defendants. You have heard the evidence in the case detailed at great length by the witnesses, and fully and carefully commented upon by counsel, and it is no doubt fresh in your recollection; therefore, we shall not consider it necessary to recapitulate it, but shall confine ourselves mainly to pointing out to you the principles of law which should guide you in considering the facts, determining what they are, and coming to a correct conclusion.

The case is one mainly of fact, and therefore for your determination. There are, we conceive, no difficult questions of law involved; but, as in every other case, there are certain principles which specially apply; these we will point out, and you will then determine the case, according to those principles as applied to the facts given in evidence, without any prejudice, and without any consideration of the condition or standing of the parties. You are to determine the case simply upon the facts as you find them to be, after giving them careful consideration, and according to the principles of law which should guide you in applying these facts, without considering who the parties are, their station or condition.

It is admitted in the case, and it is not a matter of dispute, that Robert Marsden, the husband of the plaintiff, was in the employ of the defendants, and was killed while in such employ

on the 23d day of October, 1882. The plaintiff claims that because of his being in the employ of the defendants and because of the circumstances under which he was killed, the defendants are liable to make compensation to her for his death; and the question you are to determine is whether this be so or not. You are not to conclude that the defendants are liable simply because he was killed while in their employ. The plaintiff must show that the death occurred under such circumstances as render the defendants liable. Plaintiff must show that there was some default or negligence on the part of the defendants which makes them liable and responsible in damages for his death. He was in the employ of the defendants as a driver, and you have heard from the witnesses what his duties as driver were. When he entered that employment, he took upon himself the ordinary risks which would naturally be incident to it; and if he lost his life by an ordinary risk, such as was naturally incident to the employment of driver, the defendants would not be liable for his death, and could not be called upon to pay damages on account of it.

When a person enters into any given employment he takes upon himself all the ordinary risks that arise out of that employment. That is a rule of law which has been firmly established, and it is one that you must bear in mind and apply in this case; so that unless you find that this death was occasioned by some risk other than that which was ordinarily incident to the employment or work of a driver, the defendants would not be liable.

[They cannot be held liable unless they were negligent in some respect, and unless that negligence was the immediate cause of the accident, and of his death. If they were negligent in the original construction of these works; or if they were negligent in the manner in which they kept up these works; and if that negligence caused his death, without any default or negligence on his part, then the defendants would be liable.]

You will determine then, in the first place, whether the accident that caused his death arose out of the ordinary risks of the employment of a driver in a coal mine such as this was; and this you must determine from the evidence. If you find that his death was not occasioned by such ordinary risk, then you must determine whether it was occasioned by the negligence of the defendants; that would be the next question. If you find that it

was not occasioned by the defendants' negligence, that will be the end of the case; the defendants would not be liable.

[The plaintiff claims that defendants were in default, and were negligent, because of the manner in which they originally constructed this gangway. This is one of the questions which you will have to consider; and in considering it, you will bear in mind and apply all the testimony that has been given in the case which relates to the subject. Consider it fairly; weigh it carefully, the evidence on both sides, the evidence of all the witnesses whom you have heard on that subject; consider the relative credibility of each witness, if there is any discrepancy or conflict between them. If there be not, weigh the evidence; consider what is the bearing of its several parts, and determine from it all whether this heading was originally constructed in a careful manner, having in view its nature and the purposes for which it was intended.]

The defendants contend that they never intended, and that they were not bound to intend, that it should be constructed so as to prevent an accident such as occurred in this instance; that it was never intended to be so constructed as to bear the strain of being struck by the cars in the way that it is claimed it was struck in this case. You will have to determine from the evidence what the ordinary purposes of such construction are, and whether or not it was of the strength and stability which it should have had, constructed where it was and constructed for the purpose for which it was. If it was carelessly constructed, that would be one fact in the case which you would have to consider, together with others, in coming to a conclusion whether the defendants were liable. They would also be bound to maintain the structure in a proper condition, and if it was properly constructed at first, if the timbers were such as they had a right to select and put in place at first, you would have to consider also whether they remained so, and whether such time had elapsed that they should have repaired them and renewed them.

[You have heard the evidence on that point, which you will carefully consider, and from it all determine whether there was any negligence of the defendants in the original construction; whether there was any negligence of the defendants in maintaining the work; whether they allowed the timbers to remain there until they became so weakened by natural decay that they were

not fit for the purposes for which they were intended. You will have to determine how far the defendants were bound to make that structure, those legs, and collars, and lagging above them, all that has been described, how far they were bound to make them stable, so as to resist the ordinary forces that might, and which they had reason to expect would, be brought against them.]

[We will leave to you the question of fact whether, as prudent or careful men, they ought or ought not to have constructed that structure so that it would resist the force, whatever it may have been, which you find was brought against it in this instance when the cars ran off the track. We cannot say to you as a question of law, either that they were bound to make it strong enough to resist the impact of the cars if they ran off the track, or that they were not. You must determine that from the testimony, and from the nature of the case.]

If you find that defendants were not negligent in putting up this structure, then, as we have said, your verdict would have to be for the defendants, and that would be the end of the case. It would not be necessary for you to go any farther in your investigation. But if you find that they did not originally erect this structure as it should have been, and did not maintain it, as they should have done, by inspection and repairs, if found insecure, then it will be necessary for you to go further, because even if that be the case, there could be no recovery here if the negligence of the plaintiff contributed to the accident. The rule of law is that where a plaintiff seeks to recover damages on account of the negligence of a defendant, the person injured must be free from negligence himself. If his negligence contributed to the injury, he is not entitled to recover.

[Therefore you will have to consider in this case whether decedent, Robert Marsden, was guilty of contributory negligence, either in the manner in which he managed his team, or the manner in which he managed the cars, by braking them, or otherwise contributed to this accident. If you find that he did then his widow (plaintiff) is not entitled to recover.]

The defendants contend, as you have heard, that he was guilty of negligence in starting out the train of cars at the time he did, and in braking the cars in the manner in which he did. They contend that this contributed directly to the accident. It is a question for you, under the evidence, to determine how that

was. If he managed the train in a careful and prudent manner, as a careful, prudent driver would do under the circumstances, as they then existed, his action would not stand in the way of a recovery. On the other hand, if he managed it carelessly, or was reckless in any way, or if he managed it in an unskilful manner, and not in the way that a careful, prudent man would, under the circumstances as they existed at the time, then his negligence would stand in the way of a recovery.

You must consider the case with reference to the time and the circumstances under which it occurred. You cannot hold him liable for mere errors of judgment, if they were such as would naturally occur to any person, under the circumstances, and at the time. You cannot hold him to so strict a rule as to say that if he did anything which, in your sound judgment, looking back upon the case, you would consider he should not have done, he was necessarily negligent. If he acted as a careful, prudent man or driver ought to have done, considering the time and the circumstances under which he was at the time, then it would not be negligence on his part. If you find that he was negligent, as we have said, then there can be no recovery, even if the defendants were negligent.

[And, with respect to the negligence of the defendants and the negligence of the plaintiff, if you find that one or the other was negligent at all, you must remember this,—that the negligence must be contributory to the accident. It must have been the immediate cause of the accident; otherwise, it has no effect one way or the other upon the case. In other words, if the defendants were negligent in the manner in which they constructed that heading in some respects, but if that did not in any way contribute to this accident, then it is of no consequence whatever in the case. So, if the deceased was negligent in some respects, but if that negligence did not contribute to the accident, it would have nothing to do with the case; it must be negligence such as contributed to the accident. If the accident occurred from any defect in the works, either as to the timber in the heading, or as to the track, and that defect was such that the deceased, passing it there as he did from day to day and from time to time, if he was a man of ordinary prudence, could have discovered and in the judgment of the jury should have discovered it, taking into consideration what he was employed to do, and the nature of his employment, then he ought to have made it

known and had it remedied; and if he knew of it, or should have known of it, and continued to work on and made no complaint, that would be negligence on his part. You will have to determine how that was.]

[If you find that the spreading of the rail had anything to do with the accident, you will have to determine whether he knew or should have known of that; this is a question of fact for you to determine. You will consider the facts as testified to, by all the evidence and the circumstances there, the place where it was in this heading; whether it was light enough for him to see it; whether he naturally would have seen it before the accident happened. In considering the question of their negligence you will determine whether they inspected the works as they should have done; whether they should have known of this defect, if there was any defect in the rail, and whether they should have remedied it.]

[The whole case turns upon these questions of fact; and you are to weigh the evidence carefully, without prejudice, on both sides, and determine these questions: First, whether it was an ordinary risk; whether it was such a thing as might occur in the management of any works of this kind, without anyone being at fault; whether it was one of those accidents that sometimes occur which are unforeseen—which no one was bound to foresee—and which will sometimes occur. You will determine whether or not the defendants were negligent in the manner in which they constructed the works, or in the manner in which they kept them up, or failed to keep them up; the manner in which they kept up the track, and if they failed to inspect it. If you find that that was the cause, then whether the deceased was negligent in any way, in the manner in which he managed his team or his train at that time, and whether that contributed to the accident.]

If you find for the plaintiff, then you have to determine the damages. If you come to that point, you can give only pecuniary damages resulting to the plaintiff from the loss of her husband. You can allow nothing at all for injury to her feelings; nothing for his pain, suffering, or anything of that kind, simply the money value of his life to his wife and family. In arriving at that you take into consideration his age and his physical condition; the wages he could earn, or was likely to earn—of course, the younger he was, at least from a certain

point, the more physically able he was, the more he could earn, and the more his life would be worth; and from that you have to determine what was the pecuniary loss to his wife from his death. As was argued to you by the counsel for defendants, that would not be his whole wage-earning capacity, because, as properly stated, his own living would have to come out of his earnings, and that would not go to his wife. There is no definite measure for damages of this kind. The jury must be careful to award nothing but damages for loss of support of the husband to the wife; nothing for injured feeling; nothing on sentimental grounds whatever, but simply the money value. You get at that in the best way you can, by exercising your fair judgment upon the facts of his wage-earning capacity, his situation in life, and the circumstances as they have been detailed to you.

The assignments of error were to the answer to the request to instruct above set forth, and to the portion of the charge inclosed in brackets.

The jury rendered a verdict for plaintiff for $2,800.

*Orvis & Snyder,* for plaintiffs in error.—The plaintiff below offered no evidence to show that the superintendent in charge of the mine was incompetent, inexperienced or unskilful, or that in any manner he was incompetent to be given charge of such work. In the absence of such evidence he is presumed to have been ordinarily competent and skilful. Fairview Coal Co. v. Biddle, 18 W. N. C. 110.

The superintendent was the proper judge of the nature and size of the timber to be used, whether mud sills and lateral braces were necessary, and what slope should be given to the posts. These were all matters about which the defendants themselves would probably know nothing, and, in the nature of the case, would rely upon the judgment of their superintendent. Waddell v. Simoson, 112 Pa. 574, 4 Atl. 725.

Even if this heading had been defectively constructed, through the carelessness or negligence of the person in charge of the work, and this defective construction had caused the accident, the owners of the mine would not be liable, in the absence of evidence of notice to them of the defect which they refused or neglected to remedy. Waddell v. Simoson, 112 Pa. 574, 4 Atl. 725.

A mining boss and a driver boss are fellow servants; and

where the death of the latter is caused by the negligence of the former, the owner of the mine is not responsible. Lehigh Valley Coal Co. v. Jones, 86 Pa. 432; Delaware & H. Canal Co. v. Carroll, 89 Pa. 374; Keystone Bridge Co. v. Newberry, 96 Pa. 246; Fairview Coal Co. v. Biddle, 18 W. N. C. 108; Campbell v. Pennsylvania R. Co. 1 Sad. Rep. 299; Johnston v. Pittsburgh & W. R. Co. 114 Pa. 443, 7 Atl. 184.

"A servant who voluntarily accepts a dangerous employment assumes all the patent risks incident thereto; and his master is not liable for damages in case of an accident occurring from such risk in the course of such dangerous employment. It is not negligence in a master to fail to provide against a patent risk, unless he has been requested to do so by his servant, or has induced his servant to believe that he would do so. Unless there is evidence of a request by a servant to provide against a patent risk, the jury cannot consider the question whether it was the duty of his master to remedy it or not." Marsden v. Haigh, 14 W. N. C. 526.

We submit that the charge authorized the jury to find for the plaintiff, notwithstanding they might also find that the accident resulted from the defective condition of the timber, and that the deceased knew of this condition and had never made complaint of the same. This would be contrary to the doctrine laid down by this court for so long a time, and in so many cases, as to have become elementary law on the subject of concurrent negligence. Frazier v. Pennsylvania R. Co. 38 Pa. 104, 80 Am. Dec. 467; Patterson v. Pittsburg. & C. R. Co. 76 Pa. 389, 18 Am. Rep. 412; Mansfield Coal & Coke Co. v. McEnery, 91 Pa. 185, 36 Am. Rep. 662.

Where the charge, as a whole, tends to mislead the jury, it is error, and differs from a mere omission to instruct. Pennsylvania R. Co. v. Berry, 68 Pa. 272.

"The omission of the court to charge upon a particular point, for which there is no request, is not assignable for error; yet if the language of the court, taken in connection with the circumstances of the case, may have misled the jury as to the law, or if the tendency of the charge was to mislead them, it is ground for reversal. Bisbing v. Third Nat. Bank, 93 Pa. 79, 39 Am. Rep. 726.

"Where the language of the charge, as to the true character of the testimony tends to mislead the jury, it is error and ground for reversal." Fawcett v. Fawcett, 95 Pa. 376.

"When a jury is misled by the charge of the court, the verdict will be reversed." Skinner v. McAllister, 3 Sad. Rep. 306.

"Where particular instructions on a given point are not asked for, the court below will be reviewed upon the general effect of the charge, and not upon sentences or paragraphs selected from it." Lehigh Valley R. Co. v. Brandtmaier, 113 Pa. 610, 6 Atl. 238

*Thomas H. Murray* and *Cyrus Gordon,* for defendant in error.—Where a duty is defined, a failure to perform it is negligence as a matter of law; but where material facts are disputed, or even if the facts be undisputed, yet if there be substantial doubts as to the inferences to be drawn from these facts, the question is for the jury. McKee v. Bidwell, 74 Pa. 218; Pennsylvania R. Co. v. Werner, 89 Pa. 64; Pittsburgh, O. & E. L. Pass. R. Co. v. Kane, 4 Sad. Rep. 188; Lehigh Valley R. Co. v. Greiner, 113 Pa. 600, 6 Atl. 246; Neslie v. Second & Third Streets Pass. R. Co. 113 Pa. 300, 6 Atl. 72.

The master is bound to provide a safe place for his servant, and to know that appliances once safe may become unsafe. Baker v. Allegheny Valley R. Co. 95 Pa. 211, 40 Am. Rep. 634; Patterson v. Pittsburg & C. R. Co. 76 Pa. 389, 18 Am. Rep. 412; Schall v. Cole, 107 Pa. 1; Tissue v. Baltimore & O. R. Co. 112 Pa. 91, 56 Am. Rep. 310, 3 Atl. 667; Green & C. Street Pass. R. Co. v. Bresmer, 97 Pa. 103.

If the negligence of the master combines with that of a fellow servant to produce the injury, the master is liable. Thomp. Neg. 981, § 10; Cayzer v. Taylor, 10 Gray, 275, 69 Am. Dec. 317; Stringham v. Stewart, 100 N. Y. 516, 3 N. E. 575; Benzing v. Steinway & Sons, 101 N. Y. 547, 5 N. E. 449.

A superintendent having charge and general control of the mine is in no sense a fellow servant for whose negligence his company is exempt. Patterson v. Pittsburg & C. R. Co. 76 Pa. 389, 18 Am. Rep. 412; Lehigh Valley Coal Co. v. Jones, 86 Pa. 439; Tissue v. Baltimore & O. R. Co. 112 Pa. 91, 56 Am. Rep. 310, 3 Atl. 667; Mullan v. Philadelphia & S. Mail S. S. Co. 78 Pa. 25, 21 Am. Rep. 2; Keystone Bridge Co. v. Newberry, 96 Pa. 246.

The omission of a judge to charge upon a particular aspect of the case is no just ground of complaint by a party who submitted no points to the court. Garsed v. Turner, 71 Pa. 56;

Pittsburg, Ft. W. & C. R. Co. v. Com. 66 Pa. 73, 5 Am. Rep. 344; Walker v. Humbert, 55 Pa. 407; Davis v. Bigler, 62 Pa. 249, 1 Am. Rep. 393.

It is not fair to select a few sentences from the charge of the court; the whole must be taken together. Carothers v. Dunning, 3 Serg. & R. 373; Kerr v. Sharp, 14 Serg. & R. 399; Watts v. Cummins, 59 Pa. 84; Pennsylvania R. Co. v. Conn, 111 Pa. 431, 3 Atl. 234.

Unless the plaintiff knew, or as a prudent man should have known, not only of the defect, but also of the risk likely to result therefrom, he could not be precluded from claiming damages, if otherwise entitled to recover. Schall v. Cole, 107 Pa. 1.

Where there is any doubt whether the employee was acquainted, or ought to have been acquainted, with the risk, the determination of the question is necessarily for the jury. Rummell v. Dilworth, P. & Co. 111 Pa. 343, 2 Atl. 355, 363.

PER CURIAM:

We do not deem it necessary to refer to the evidence in detail nor to review the well-settled authorities. The only substantial questions to be determined were those of fact relating to defective construction and negligent maintenance of the works by the defendants below.

The evidence was well submitted and sustains the verdict.

Judgment affirmed.